UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| K. F. JACOBSEN & CO., INC., | Case No.: 3:12-CV-2062-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| RYAN GAYLOR, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

K.F. Jacoben & Co., ("Jacobsen") filed this action against its former employee, Ryan Gaylor ("Gaylor"), seeking damages resulting from Gaylor's taking, retaining, and disclosing numerous confidential documents from Jacobsen, and an injunction preventing Gaylor from engaging in such conduct in the future. Gaylor initially moved to dismiss all five claims asserted by Jacobsen, relying on numerous extrinsic documents. On March 19, 2013, the court advised the parties that it "will not

consider extrinsic evidence regarding defendant's motion to dismiss" because the extrinsic evidence related to the merits of the parties' dispute and not to the plausibility of the claim pleaded in the complaint. Thereafter, Gaylor withdrew his motion to dismiss with regard to all but two claims: the Second Claim for Relief for violation of the Stored Wire and Electronic Communications and Transactional Records Access Act (18 U.S.C. §§ 2701-2712)(the "Stored Communications Act"); and the Fourth Claim for Relief for conversion. The motion to dismiss these two claims is currently before the court.

Gaylor asserts Jacobsen has failed to allege the involvement of the Internet or other electronic communications involving a third party and, therefore, has failed to state a claim under the Stored Communications Act. Gaylor also argues that Jacobsen's conversion claim is preempted by its claim for violation of the Uniform Trade Secrets Act (OR. REV. STAT. 646.461-646.475) (the "Trade Secrets Act"), and that a plaintiff may not base a conversion claim on copies of information. The court finds that Jacobsen's computers are not facilities through which "electronic communication services" are provided; that Jacobsen's conversion claim is not preempted by the Trade Secrets Act to the extent he seeks damages for the conversion of information other than trade secrets; and that Jacobsen has adequately alleged that Gaylor exercised control over the copied information in a manner inconsistent to Jacobsen's rights as owner of the information. Accordingly, Gaylor's motion to dismiss is granted with regard to Jacobsen's Second Claim for Relief for violation of the Stored Communications Act and is denied with regard to Jacobsen's Fourth Claim for Relief for conversion.[1]

---

[1]The parties have consented to jurisdiction by magistrate in accordance with 28 U.S.C. § 636(c)(1).

*Preliminary Procedural Matter*

Jacobsen asks the court to take judicial notice of a court order, a transcript of court proceedings, and a declaration, all filed in *Ryan Gaylor v. K.F. Jacobsen & Co., Inc., and Ross Island Sand & Gravel Co.*, Case No. 1207-09372, a case currently pending in the Circuit Court for the State of Oregon for the County of Multnomah (the "State Action"). Specifically, Jacobsen requests "that the court take judicial notice of Judge Wittmayer's findings that defendant accessed and removed KFJ's documents without authority, as those findings relate to defendant's challenges to the plausibility of KFJ's conversion and Electronic Privacy Act claims." (Pl.'s Supplemental Br. in Opp'n to Deft.'s Mot. to Dismiss at 1.) Gaylor does not object to the court taking judicial notice of the existence of these court documents or the content of those documents, but does object to the court taking judicial notice of the facts contained in the documents as true or legally established.

The parties are offering materials outside of the pleadings in support of, or in opposition to, a motion to dismiss. In general, material outside the pleadings may not be considered in ruling on a motion to dismiss unless the motion is treated as one for summary judgment and the parties are "given reasonable opportunity to present all materials made pertinent to such motion by Rule 56." *Jacobson v. AEG Captial Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). There are two exceptions to this rule. First, a court may consider "material which is properly submitted to the court as part of the complaint." *Lee v. County of Los Angeles*, 240 F.3d 754, 774 (9th Cir. 2001). A document is not "outside" the complaint if the complaint specifically refers to the document, its authenticity is not questioned, and the plaintiff's complaint necessarily relies on it. *Id*. at 774. When the plaintiff fails to introduce a pertinent document as part of his pleading, the defendant may introduce the exhibit as part of his motion attacking the pleading. *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1998).

The second exception is that under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of "matters of public record." *Lee*, 240 F.3d at 774. Rule 201 allows judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court and were actually litigated. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, a court may not take judicial notice of facts presented in those documents or in court opinions for the purpose of considering those facts to be established in the case currently before them. *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003)(citing *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983)("As a general rule, a court may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause before them.")).

The state court documents offered by K.F. Jacobsen are undeniably matters of public record appropriate for consideration by the court for the limited purpose of determining what issues are before the court in the State Action. Accordingly, it is appropriate for the court to take judicial notice of the documents offered, as evidence of the claims asserted and the arguments made by the parties in motion practice in the State Action. However, the court will not take judicial notice of the factual assertions contained therein, such as the findings with regard to Gaylor's accessing and removal of Jacobsen's confidential information.

The court grants Jacobsen's requests for judicial notice of the documents filed in the State Action and will consider the contents of such documents, where appropriate, in ruling on the pending

motion to dismiss.   Because Judge Wittmayer's findings with regard to Gaylor's actions in copying

and retaining confidential information are consistent with Jacobsen's allegations in support of its

claims for violation of the Stored Communications Act and conversion, and in light of the fact that

the court must view those factual allegations as true and in a light most favorable to Jacobsen when

considering Gaylor's motion to dismiss, this ruling is not outcome-determinative and does not

adversely affect Jacobsen at this juncture.

*Background*

The allegations of the amended complaint, filed on November 28, 2012  (the "Complaint"),

establish that Jacobsen, a manufacturer and supplier of asphalt materials and an asphalt contractor,

hired Gaylor on May 5, 2008, to work as a project estimator.  (Compl. ¶¶ 5-7.)  On December 1,

2009, Jacobsen assigned Gaylor to the position of quality control technician.  (Compl. ¶ 8.)  As a

quality control technician, Gaylor had access to a company computer and authorization to access

electronic files to the extent necessary to perform his job duties.  (Compl. ¶ 9.)  Jacobsen informed

Gaylor of his "obligations to keep sensitive and proprietary information regarding quality control,

quality control tests, and other business related information confidential."  (Compl. ¶ 11.)

In July 2011, Jacobsen removed Gaylor from the quality control technician position and

assigned Mike Rinne ("Rinne") to that position.  (Compl. ¶¶ 12-13.)  Gaylor continued to work for

Jacobsen in other positions but no longer had authorization or consent to use company computer

terminals to access electronically stored information.  (Compl. ¶¶ 12, 14, 18.)  In mid-November

2011, Gaylor requested that he be assigned a computer.  (Compl. ¶ 19.)   Jacobsen denied the

request, specifically informing Gaylor that "he would not be given an computer or given access to

the company's computer terminals to access electronic information of plaintiff and did not have the

authorization or consent to access the company computer and the electronic data stored on those computers." (Compl. ¶ 19.)

On December 5, 2011, Gaylor was seen accessing the computer terminal assigned to Rinne while Rinne was out of the office. (Compl. ¶ 20.) Gaylor left his employment with Jacobsen on January 6, 2012, and began working for a competitor of Jacobsen's four months later. (Compl. ¶¶ 22-23.) On October 24, 2012, Jacobsen learned that Gaylor had "taken, retained, and disclosed to his attorney, Eric J. Fjelstad, numerous trade secret documents of plaintiff", some of which were stored electronically. (Compl. ¶¶ 24, 28.) The original copies of the misappropriated documents allegedly remain in the possession and control of Gaylor or his attorney. (Compl. ¶ 36.)

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969

(9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909, at *4 (9th Cir. Sept. 12, 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

### Discussion

#### I. Second Claim for Relief – Violation of the Stored Communications Act

Gaylor moves to dismiss Jacobsen's Second Claim for Relief arguing that the Stored Communications Act applies only to information maintained on the Internet and requires the involvement of a third-party in the offending transaction. Jacobsen contends that the company computers qualify as "electronic communication services" as defined by the Stored Communications Act and that they have stated a viable claim for violation of the Stored Communications Act.

Congress enacted the Stored Communications Act in 1986 to address the issues caused by the advent of the Internet with regard to potential privacy breaches that the Fourth Amendment did not adequately address. *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900 (9th Cir. 2008). "Generally, the [Stored Communications Act] prevents 'providers' of communications services from divulging private communications to certain entities and/or individuals." *Id.* Succinctly stated, "[t]he [Stored Communications Act] gives network account holders statutory privacy rights against access to stored information held by ISPs." *In re United States*, 665 F. Supp. 2d 1210, 1213 (D. Or. 2009).

The relevant provisions of the Stored Communications Act provide a cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic

communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. §§ 2701(a)(1), 2707(a) (2012). The Stored Communications Act incorporates the definitions set forth in the Wire and Electronic Communications Interception and Interception of Oral Communications Act (18 U.S.C. §§ 2510-2522)(the "Wiretap Act") found at 18 U.S.C. 2510. 18 U.S.C. 2711(1) (2012).

The Wiretap Act defines "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. 2510(15) (2012). The term "electronic storage" is defined as "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17) (2012).

Gaylor argues that because the Stored Communications Act governs only the privacy of stored Internet communications, it serves to protect only information held by the third-party providers that facilitate those communications, not information stored by the customers of those providers that either initiate or receive the communications. Relevant case law supports this argument.

The Ninth Circuit compared an "electronic communication service" provider to a commercial storage facility leased by a customer to store sensitive documents in *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2004). The court, addressing the issue of when information is in "electronic storage", explained that

> The [Stored Communications Act] reflects Congress's judgment that users have a
> legitimate interest in the confidentiality of communications in electronic storage at
> a communications facility. Just as trespass protects those who rent space from a

commercial storage facility to hold sensitive documents, the Stored Communications Act protects users whose electronic communications are in electronic storage with an ISP or other electronic communications facility.

*Id*. at 1072-73.

 This court, relying on *Theofel*, found that the owner of equipment through which third parties could engage in electronic communication was not a provider of "electronic communication services", but rather a user of such services.   In *Noel v. Hall*, Civ. No. 99-649-AC, 2012 WL 3241858, at *8 (D. Or. April 27, 2012) , the plaintiff provided telephone, computer, and fax services to three businesses and routinely tape-recorded calls made to the businesses as back-ups of the original calls.   The plaintiff argued that this conduct qualified as "electronic communication services" and that the recordings were properly characterized as electronic storage under the Wiretap Act.[2]  *Id*.  This court disagreed finding that "in the context of the present matter, a provider of an 'electronic communications service' would be Noel's telephone carrier, whereas he himself would qualify as a user of that service.  The fact that Noel made his service available to third parties for their use is of no relevance to this analysis."  *Id*. at  *9.

Other district courts have found that a personal computer is not an "electronic communication service" provider for the purposes of the Stored Communications Act.  In *In re Pharmatrak, Inc. Privacy Litgation*, 220 F. Supp. 2d 4, 6-7 (D. Mass. 2002), the plaintiffs alleged that the defendant's placement of cookies on their computers to store information derived through the plaintiffs' use of their computers and defendants' subsequent access of such information violated the Stored Communications Act.  The court dismissed the claim finding that a "personal computer is not a

_____

[2]While the plaintiff in *Noel* asserted claims under the Wiretap Act, the holding is relevant to Jacobsen's claims under the Stored Communications Act because both use the definitions set forth in the Wiretap Act.

'facility through which an electronic communication service is provided' for the purposes of §

2701." *Id*. at 13. The court recognized that while personal computers may be used by consumers

to access the Internet, "that is not enough for the purposes of the [Stored Communications Act]. The

relevant 'service' is Internet access, and the service is provided through ISPs or other servers, not

through Plaintiffs' PCs." *Id*. In a case with virtually identical facts and claims as *Pharmatrak*, a

New York court held the placement and access of cookies placed on personal computers does not

fall under the Stored Communications Act "because plaintiffs are not 'electronic communication

service' providers." *In re Doubleclick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 511 (S.D.N.Y.

2011).

　　Jacobsen argues that because it allows third parties to send or receive wire or electronic

communications through its computer terminals, it provides "electronic communication services"

as that term is defined in the Stored Communications Acts. This argument virtually mirrors that

made by the plaintiff in *Noel*. As in *Noel*, this court finds here that Jacobsen's Internet provider

qualifies as the provider of "electronic communication services" for Jacobsen, while Jacsobsen is

properly characterized as a user of that service. And, as in *Noel*, the fact the Jacobsen allowed third

parties to access the Internet through its computers is not relevant to this determination.

　　Jacobsen also argues that "district courts have found that an employer may bring a claim

against an employee under Section 2701 for unauthorized access to the employer's computers" but

cites only *Monson v. Whitby School, Inc.*, No. 3:09CV1096 (MRK), 2010 WL 3023873 (D. Conn.

2010) in support of this argument. *Monson* does not address the question of whether the employer

provided "electronic communication services" through its computers. Instead, the *Monson* court

considered only whether the employer had adequately alleged that the employee exceeded her

authority in accessing the employer's computers.  The court specifically indicated that "Dr. Monson's sole argument in support of her motion to dismiss this counterclaim is that Whitby's 'conclusory' and 'formulaic repetition that Dr. Monson "exceeded her authority" is insufficient to establish a plausible claim of unauthorized access'" and denied the motion to dismiss on this ground alone *Id*. at *5.  Accordingly, *Monson* is not relevant to the issues currently before the court.

Jacobsen's computers are not facilities through which "electronic communication services" are provided.  Consequently, Jasobsen is unable to state a claim for violation of the Stored Communications Act.  Gaylor's motion to dismiss Jacobsen's Second Claim for Relief is granted.

## II.  Fourth Claim for Relief – Conversion

### A.  *Uniform Trade Secrets Act Preemption*

Gaylor argues that Jacobsen's conversion claim is preempted by the Oregon Trade Secrets Act (the "Trade Secrets Act").  The Trade Secrets Act supercedes "conflicting tort, restitution or other law of Oregon providing civil remedies for misappropriation of a trade secret."  OR. REV. STAT. 646.473(1) (2011).  Actions seeking contractual and criminal remedies are not affected by the Trade Secrets Act. OR. REV. STAT. 646.473(2)(a) and (c) (2011).  Additionally, a plaintiff may still pursue an action for "civil remedies that are not based upon misappropriation of a trade secret." OR. REV. STAT. 646.473(b) (2011).  The term "trade secret" is defined as:

> information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:
>
> > (a)  Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OR. REV. STAT. 646.461(4) (2011)

Oregon courts have not addressed the extent to which the Trade Secrets Act preempts civil remedies. However, a number of courts in other states have extended the preemptive effect of the language found in OR. REV. STAT. 646.473 to claims that are based on the same operative facts as a claim for trade secret misappropriation under the Trade Secrets Act. *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297-98 (11th Cir. 2003) Where the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Trade Secrets Act. *Hutchinson v. KFC Corp.*, 809 F.Supp. 68, 72 (D. Nev. 1992). This district has specifically held that the Trade Secrets Act preempts conversion claims based on alleged misappropriation of trade secrets. *Kante v. Nike, Inc.*, No. CV 07-1407-HU, 2008 WL 5246090, *4 (D. Or. Dec. 16, 2008).

In the Fourth Claim for Relief, Jacobsen alleges that Gaylor "misappropriated and converted to his own use the confidential and proprietary information of plaintiff." (Compl. ¶ 61.) Jacobsen also alleges, in a paragraph incorporated by reference in the Fourth Claim for Relief, that a large number of misappropriated documents, "some of which may be additional misappropriated trade secrets of plaintiff or confidential and proprietary information of plaintiff" remain in Gaylor's possession and control. (Compl. ¶ 36.) Jacobsen argues that this language is broad enough, when read together to allege that Gaylor may have in his possession information that is not trade secret information and, therefore, not covered by the Trade Secrets Act.

Viewing the allegations of the Complaint in a light most favorable to Jacobsen, the court

finds that the term "confidential and proprietary information" could be construed broadly enough to include information that does not fall with the definition of "trade secret" under the Trade Secrets Act. Consequently, the court finds that to the extent Jacobsen's Fourth Claim for Relief for conversion seeks damages for the conversion of information other than trade secrets, it is not preempted by the Trade Secrets Act.

     *B.  Failure to State a Claim*

     Gaylor argues that even if the conversion claim is not preempted by the Trade Secrets Act, Jacobsen is unable to state a claim for conversion based on the facts alleged in the Complaint. Gaylor contends that he "merely copied documents from KFJ's internal computer system at a time when he had the authority to do so" and that because he did nothing to prevent anyone from Jacobsen from accessing those same documents, he did not interfere with Jacobsen's right to control the documents. (Def.'s Mot. To Dismiss at 11-12). Jacobsen counters by citing a case from this district in which the court found that an employee, who copied confidential documents of her employer shortly before she was terminated, engaged in misconduct and a case from the Eighth Circuit in which the court held that an employer was entitled to the return of confidential documents generated by a former employee under the theory of equitable replevin.

     The fact that this district has found that the conduct alleged in the Complaint is "misconduct" does not equate to a finding that it supports a claim for conversion. In *Furnish v. Merlo*, Civ. No. 93-1052-AS, 1994 WL 574137 (D. Or. Aug. 29, 1994), the court considered how the after-acquired evidence of the employee's misconduct should affect the employee's lawsuit against her employer for discrimination in the workplace. Defendant employer did not assert a counter-claim for conversion and the court did not consider whether the employee's conduct supported a claim for

conversion.  It simply found that plaintiff, by copying and removing confidential documents from

the workplace without authority, engaged in some form of misconduct.  This finding is not relevant

to the question of whether allegations of such conduct states a claim for conversion.  Similarly, the

Eighth Circuit's determination that an employer who sought the return of confidential documents

from taken by a former employee was entitled to the remedy of equitable replevin in *In re: IBP*

*Confidential Bus. Documents Litig.*, 754 F.2d 787 (8th Cir. 1985),  is not instructive here where

Jacobsen seeks to recover damages on a conversion claim.

Under Oregon law, conversion is "an intentional exercise of dominion or control over a

chattel which so seriously interferes with the right of another to control it that the actor may be justly

required to pay the other the full value of the chattel."  *In re Conduct of Martin*, 328 Or. 177, 184

(1998)(quoting RESTATMENT (SECOND) OF TORTS § 222A (1965)).  "Bad faith is not required; the

gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with

the plaintiff's rights.  *Naas v. Lucas*, 86 Or. App. 406, 409 (1987).

Jacobsen alleges that Gaylor "misappropriated and converted to his own use the confidential

and proprietary information of plaintiff", that Jacobsen is the owner of the information, and that

Jacobsen took efforts to maintain the secrecy of, and sole control over, the information.  (Compl. ¶¶

24, 26, 61.)  While it is true Jacobsen alleges that Gaylor merely made and retained copies of

information and did nothing to prevent Jacobsen from accessing such information, his assertion that

his exercise of control over the documents was consistent with Jacobsen's rights is not well taken.

Jacobsen had the right, and took steps, to ensure that no one other than specific employees had

access to the information.  Gaylor's copying, retaining, and sharing of the information with third

parties, without Jacobsen's consent, was inconsistent with Jacobsen's control over the documents

and the information in the documents, and its right to keep the information confidential. Accordingly, Gaylor has "exercised control over the chattel[3] inconsistently" with Jacobsen's rights to maintain the confidentiality of the information.

This conclusion is consistent with the holding in *Quantlab Technologies Ltd. v. Godlevsky*, 719 F. Supp. 2d 766 (S.D. Tex. 2010). There, the court rejected a similar argument that because the defendant did not destroy or make unavailable to the plaintiff the allegedly converted confidential information when he copied the information from the plaintiff's computer, he did not adequately exercise exclusive dominion and control over plaintiff's property. The court explained that:

> Texas conversion law does not require exclusive control. Rather it recognizes conversion where the defendant exercises dominion and control of the property "to the exclusion of *or inconsistent with* the owner's rights." (citation omitted). Quantlab alleges that Godlevsky is in possession of its confidential information, refuses to return the information, and has provided the information to his co-conspirators, all without Quantlab's permission and against its express wishes. Therefore, the Court finds that Quantlab has adequately alleged that Godlevsky's possession of the information is inconsistent with Quantlab's right to exclusive possession of its property.

*Id*. at 780.

Viewing the allegations of the Complaint in a light most favorable to Jacobsen, the court finds that Jacobsen's allegations that Gaylor took, retained, and disclosed information owned, and treated as confidential, by Jacobsen adequately alleges that Gaylor exercised control over the information inconsistently with Jacobsen's rights. Consequently, Gaylor is not entitled to dismissal of Jacobsen's conversion claim based on a failure to allege an adequate exercise of dominion and

---

[3]Conversion generally covers only "chattel" or "tangible" property. Because the parties have not raised the issue of whether the information allegedly converted by Gaylor is properly characterized as tangible property, rather than intangible property not subject to conversion, the court does not address this issue.

control over the information.

*Conclusion*

Gaylor's motion (#6) to dismiss is GRANTED with regard to Jacobsen's Second Claim for Relief for Violation of the Stored Communications Act and DENIED with regard to Jacobsen's Fourth Claim for Relief for conversion to the extent Jacobsen seeks damages for the conversion of information other than trade secrets. Jacobsen's request (#35) for judicial notice is GRANTED with regard to the contents of, but not the factual assertions contained in, the state court documents submitted to the court.

DATED this 28th day of May, 2013.


        /s/ John V. Acosta
        JOHN V. ACOSTA
        United States Magistrate Judge